1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

Karyl Clarke,

               Plaintiff,

    v.

City of North Las Vegas, et al.,

               Defendants.

Case No. 2:24-cv-01046-GMN-DJA

**Order**

11
12
13
14
15

      Before the Court is pro se Plaintiff Karyl Clarke's amended complaint.  (ECF No. 9).
Plaintiff is proceeding *in forma pauperis* under 28 U.S.C. § 1915, so the Court screens his
amended complaint.  The Court allows certain of Plaintiff's claims to proceed and dismisses
others without prejudice and with leave to amend.  The Court also provides instructions and
orders regarding executing service.

16    **I.**      **Legal standard for screening.**

17
18
19
20
21
22
23
24

      Upon granting an application to proceed *in forma pauperis*, courts additionally screen the
complaint under § 1915(e).  Federal courts are given the authority to dismiss a case if the action is
legally "frivolous or malicious," fails to state a claim upon which relief may be granted, or seeks
monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2).
When a court dismisses a complaint under § 1915, the plaintiff should be given leave to amend
the complaint with directions as to curing its deficiencies, unless it is clear from the face of the
complaint that the deficiencies could not be cured by amendment.  *See Cato v. United States*, 70
F.3d 1103, 1106 (9th Cir. 1995).

25
26
27
28

      Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a
complaint for failure to state a claim upon which relief can be granted.  Review under Rule
12(b)(6) is essentially a ruling on a question of law.  *See Chappel v. Lab. Corp. of Am.*, 232 F.3d
719, 723 (9th Cir. 2000).  A properly pled complaint must provide a short and plain statement of

1    the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp.*

2    *v. Twombly*, 550 U.S. 544, 555 (2007).  Although Rule 8 does not require detailed factual

3    allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the

4    elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Papasan v.*

5    *Allain*, 478 U.S. 265, 286 (1986)).  The court must accept as true all well-pled factual allegations

6    contained in the complaint, but the same requirement does not apply to legal conclusions.  *Iqbal*,

7    556 U.S. at 679.  Mere recitals of the elements of a cause of action, supported only by conclusory

8    allegations, do not suffice.  *Id.* at 678.  Where the claims in the complaint have not crossed the

9    line from conceivable to plausible, the complaint should be dismissed.  *Twombly*, 550 U.S. at 570.

10   Allegations of a *pro se* complaint are held to less stringent standards than formal pleadings

11   drafted by lawyers.  *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (finding that liberal

12   construction of *pro se* pleadings is required after *Twombly* and *Iqbal*).

13           Federal courts are courts of limited jurisdiction and possess only that power authorized by

14   the Constitution and statute.  *See Rasul v. Bush*, 542 U.S. 466, 489 (2004).  Under 28 U.S.C.

15   § 1331, federal courts have original jurisdiction over "all civil actions arising under the

16   Constitution, laws, or treaties of the United States."  Cases "arise under" federal law either when

17   federal law creates the cause of action or where the vindication of a right under state law

18   necessarily turns on the construction of federal law.  *Republican Party of Guam v. Gutierrez*, 277

19   F.3d 1086, 1088-89 (9th Cir. 2002).  Whether federal-question jurisdiction exists is based on the

20   "well-pleaded complaint rule," which provides that "federal jurisdiction exists only when a

21   federal question is presented on the face of the plaintiff's properly pleaded complaint."

22   *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).  Under 28 U.S.C. § 1332(a), federal

23   district courts have original jurisdiction over civil actions in diversity cases "where the matter in

24   controversy exceeds the sum or value of $75,000" and where the matter is between "citizens of

25   different states."  Generally speaking, diversity jurisdiction exists only where there is "complete

26   diversity" among the parties; each of the plaintiffs must be a citizen of a different state than each

27   of the defendants.  *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

28

1    **II.    Screening the complaint.**

2         Plaintiff sues the City of North Las Vegas ("the "City"), the Clark County School District

3    ("CCSD"), the CCSD Police Department, Superintendent of CCSD Brenda Larsen-Mitchell,

4    CCSD Police Department Commissioner Henry Blackeye, CCSD Principal Chris Stacey, CCSD

5    Police Sergeant Evans, and CCSD Police Officer John Doe #1.  (ECF No. 9 at 2-3).  He asserts

6    that the Court has diversity jurisdiction over his claims because he is a citizen of Ohio, while the

7    Defendants are citizens of Nevada and his damages exceed $75,000.  (*Id.* at 2, 31).  He also

8    asserts that the Court has federal question jurisdiction over his claims because he is alleging

9    violations of 42 U.S.C. § 1983.  (*Id.*).

10        Plaintiff's allegations arise from his attempts in September and November of 2022 until

11   November of 2023 to remove his child from school and CCSD's refusal to honor his requests.

12   Plaintiff alleges that he contacted Raul P. Elizondo Elementary School—where his child is a

13   student—on September 15, 2022 after learning that his child was being bullied and physically

14   attacked.  (*Id.* at 4).  Plaintiff asserts that the school refused to disclose any information to him

15   because Plaintiff was not listed on school documents as a parent.  (*Id.*).  Plaintiff submitted court

16   documents to Principal Stacey on November 7, 2022, showing that Plaintiff is responsible for the

17   child.  (*Id.* at 5).  But Plaintiff alleges that Principal Stacey and CCSD denied Plaintiff's request

18   to be involved in his child's education.  (*Id.* at 5).

19        Plaintiff alleges that, after he produced the documents showing his parental rights,

20   Principal Stacey became "argumentative and deceiving," and then "detained, abducted[,] and

21   concealed the child…and orchestrated the secret removal of the child from school and the denial

22   of the child her after school care program."  (*Id.*).  Plaintiff then requested all information related

23   to two bullying incidents involving his child and asked that the documents be mailed to his home

24   in Columbus, Ohio.  (*Id.*).  Principal Stacey and CCSD refused to send the documents.  (*Id.*).

25        A few days later, Plaintiff informed Principal Stacey via email and telephone that he

26   intended to unenroll his child from school and requested the documents to do so along with all

27   documents that the school had pertaining to his child.  (*Id.* at 5-6).  Plaintiff also contacted the

28   CCSD Police Department to report his concerns over his child's safety.  (*Id.*).  He spoke with

1    CCSD Sergeant Evans, who "reaffirmed support as to [his] rights as a parent…" (*Id.*).  Plaintiff

2    then contacted local police, who explained that they had no jurisdiction over school matters.

3    (*Id.*).

4        On November 22, 2022, Plaintiff returned to the school and "was immediately

5    greeted/accosted by Principal Chris Stacey with a document (a letter trespassing Plaintiff)." (*Id.*

6    at 6).  Plaintiff alleges that the document contained "numerous errors, false allegations[,] and

7    threats," which Principal Stacey read out loud in front of the school office.  (*Id.*).  Plaintiff claims

8    that these false allegations included that Plaintiff had made threats against the school and its staff

9    and that Plaintiff was not the child's father.  (*Id.*).  Plaintiff alleges that the trespass letter

10   threatened Plaintiff with arrest.  (*Id.*).  Given the threat of arrest in the letter, Plaintiff vacated the

11   school grounds and called Sergeant Evans, who arrived on scene with two other officers.  (*Id.*).

12       However, Sergeant Evans "refused to take Plaintiff's criminal complaint pertaining to the

13   physical assault/attack against Plaintiff's child as well as the illegal conduct by Principal Chris

14   Stacey, for concealing and detaining Plaintiff's child against Plaintiff's instructions…" (*Id.*).

15   Sergeant Evans also denied Plaintiff's "desire to execute a citizen's arrest against Principal Chris

16   Stacey," and refused to retrieve Plaintiff's child.  (*Id.* at 7).  When Sergeant Evans refused,

17   Plaintiff contacted the North Las Vegas Police Department "in an effort to file a criminal

18   complaint against Principal Chris Stacey," but the North Las Vegas Police Department again told

19   Plaintiff that it had no jurisdiction over school matters.  (*Id.*).

20       Sergeant Evans then informed Plaintiff that Sergeant Evans had contacted the family court

21   and learned that Plaintiff had no rights to the child and told Plaintiff that if he remained within a

22   mile of the school, he would be arrested.  (*Id.*).  Plaintiff "immediately went to the child custody

23   court and called Sergeant Evans and requested the name of the individual who told him Plaintiff

24   had no rights to the child," but Sergeant Evans became "hostile and belligerent; demanding to

25   know Plaintiff's location within the courthouse."  (*Id.*).  Plaintiff asserts that, after he failed to

26   learn who told Sergeant Evans that Plaintiff had no rights to the child, Plaintiff went to California,

27   where his family members reside.  (*Id.* at 7).

28

Several weeks later, Plaintiff went back to the family courthouse for certain documents, but "was detained by Court Marshal[]s who informed Plaintiff that they were ordered by Sergeant Evans to detain and/or arrest Plaintiff." (*Id.*). Plaintiff alleges that the court marshals detained him for a few hours, after which he "was then searched and made to remove clothing and officially arrested in Las Vegas Family Court, by JOHN DOE #1." (*Id.*). Plaintiff asserts that Officer John Doe #1 took him to the local jail, where he stayed for "3-5 days." (*Id.*). Plaintiff alleges that upon his release he was missing his driver's license, which Officer John Doe #1 had confiscated. (*Id.* at 8).

On September 12, 2023, "Clark County school officials (Chris Stacey), made more false allegations to the mother of Plaintiff's child, claiming Plaintiff was stalking and taking photos of the school and of students of [R]aul Elizondo Elementary School." (*Id.*). The child's mother then called Plaintiff while Plaintiff "was at the custody court" and yelled at him. (*Id.*). On November 25, 2023, "the child was again attacked by a male student," and Principal Stacey and "other employees of Clark County School District," prevented Plaintiff from inquiring into the matter. (*Id.*). Plaintiff alleges that Principal Stacey and other CCSD employees (who Plaintiff does not identify) conspired to prevent Plaintiff from normal participation in his child's schooling by "refus[ing] to provide Plaintiff with requested documents pertaining to the child along with many other inquiries pertaining to the child by ignoring Plaintiff's email requests." (*Id.*). In his amended complaint, Plaintiff brings sixteen causes of action.

### A.    Plaintiff's claims against the City.

As a preliminary matter, Plaintiff alleges that the City "is the public employer of Defendants." (ECF No. 9 at 2). But Plaintiff's complaint appears to describe each of the Defendants as being employed by CCSD, not the City. While Plaintiff alleges that North Las Vegas Police Department representatives informed Plaintiff that they had no jurisdiction over school matters, Plaintiff does not appear to bring any claims against the City for these phone calls. Instead, each of his claims against the City invoke its hiring, training, and supervision of

other Defendants and *respondeat superior*[1] liability for those Defendants.  Because Plaintiff does not include any claims against the City in any other capacity than employer, and because it does not appear from Plaintiff's complaint that the City employs any of the Defendants, the Court dismisses Plaintiff's claims against the City without prejudice and with leave to amend.

### B.    *Plaintiff's claims against CCSD Police Department.*

Plaintiff lists both CCSD and CCSD Police Department as Defendants for their roles in employing Principal Stacey, Sergeant Evans, Officer John Doe #1, Commissioner Blackeye, and Superintendent Larsen-Mitchell.  However, CCSD Police Department is a subdivision of CCSD.  And Plaintiff's complaint gives the Court no reason to consider the entities to be separate.  The Court thus construes CCSD Police Department and CCSD to be the same defendant and refers to them collectively as CCSD.

### C.    *First cause of action.*

Plaintiff's first cause of action is titled "Violation of 42 U.S.C. § 1983 Unconstitutional Seizure."  (ECF No. 9 at 9-10).  Plaintiff brings this cause of action against Sergeant Evans, Officer John Doe #1, CCSD, and Commissioner Blackeye.  He alleges that "Sergeant Evans and JOHN DOE #1…conspired to intentionally stop and deprive Plaintiff of his right to liberty when they wrongfully detained…Plaintiff…by handcuffing, and using their authority, patrol vehicle[,] and jail cell as a physical barrier for imprisonment."  (*Id.* at 8).  Plaintiff also alleges that CCSD and Commissioner Blackeye are liable "because they provided the vehicle, uniform, and auxiliary equipment used to commit the seizure and without it such seizure would have been difficult to accomplish."  (*Id.* at 9).  Finally, Plaintiff alleges that CCSD and Commissioner Blackeye are liable under a failure-to-train theory, alleging that they are "responsible for the hiring, training, continued training, guidance, and discipline of Defendants Sergeant Evans and JOHN DOE #1…"  (*Id.*).

---

[1] *Respondeat superior* is the "doctrine holding an employer or principal liable for the employee's or agent's wrongful acts committed within the scope of the employment or agency."  *Respondeat Superior*, Black's Law Dictionary (12th ed. 2024).

1    The Court liberally construes Plaintiff's first cause of action as one for unlawful arrest in

2    violation of the Fourth Amendment.  "A claim for unlawful arrest is 'cognizable under § 1983 as

3    a violation of the Fourth Amendment, provided the arrest was without probable cause or other

4    justification.'"  *Perez-Morciglio v. Las Vegas Metro. Police Dep't*, 820 F. Supp. 2d 1111, 1120

5    (D. Nev. 2011) (citing *Dubner v. City & Cnty. of S.F.*, 266 F.3d 959, 964–65 (9th Cir. 2001)).

6    Probable cause exists if, at the time of the arrest, "under the totality of the circumstances known

7    to the arresting officers (or within the knowledge of the other officers at the scene), a prudent

8    person would believe the suspect had committed a crime."  *Perez-Morciglio*, 820 F. Supp. 2d at

9    1121 (citing *Blankenhorn v. City of Orange*, 485 F.3d 463, 471–72 (9th Cir. 2007)).

10    1.    Sergeant Evans.

11    Plaintiff alleges a cognizable Fourth Amendment unlawful arrest claim against Sergeant

12    Evans.  Plaintiff alleges that Sergeant Evans ordered his arrest by family court marshals.  *See*

13    *Lacey v. Maricopa County*, 693 F.3d 896, 918 (9th Cir. 2012) (explaining that, for the purposes of

14    a Fourth Amendment unlawful arrest claim, a plaintiff adequately alleged that a defendant was

15    personally involved in the decision to arrest the plaintiff by ordering the arrest, even though the

16    defendant did not personally arrest the plaintiff).  While Plaintiff does not directly allege that

17    Sergeant Evans lacked probable cause to order the arrest, the Court liberally construes Plaintiff's

18    complaint as alleging this lack of probable cause because Plaintiff alleges that he was at the

19    family court for legitimate reasons, to "obtain needed documents."  (ECF No. 9 at 7).  Liberally

20    construing his complaint and taking his allegations as true, the Court allows Plaintiff's unlawful

21    arrest claim to proceed against Sergeant Evans.

22    2.    Officer John Doe #1.

23    Plaintiff does not allege a cognizable Fourth Amendment unlawful arrest claim against

24    Officer John Doe #1.  Plaintiff alleges that Officer John Doe #1 was responsible for transporting

25    him to the local jail.  But Plaintiff appears to allege that he was already under arrest and detained

26    by the family court marshals at the time and thus, Officer John Doe #1—even if he did place

27    Plaintiff under arrest—would have probable cause to believe that Plaintiff had committed a crime.

28    Plaintiff does not allege any facts that would establish that Officer John Doe #1 should have

known that Plaintiff was at the family courthouse for legitimate reasons or that Sergeant Evans'
order to arrest him was without probable cause.  So, Plaintiff does not allege a colorable Fourth
Amendment unlawful arrest claim against Officer John Doe #1 and the Court dismisses this claim
against him without prejudice and with leave to amend.

                    3.    CCSD and Commissioner Blackeye.

        The Court dismisses Plaintiff's Fourth Amendment claims against these Defendants.
Plaintiff cannot bring his Fourth Amendment claim against these Defendants on a theory of
*respondeat superior* because "[t]here is no *respondeat superior* liability under [§] 1983." *Taylor
v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (cleaned up) (emphasis added).  Nor can he bring his
Fourth Amendment claim on a theory that these Defendants provided the resources used to arrest
him.  This is because, although the resources facilitated Plaintiff's arrest, Plaintiff's arrest was not
a *product* of Defendants' provision of resources.  While municipal bodies can be sued directly
under § 1983, "Congress did not intend municipalities to be held liable unless action pursuant to
official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc.
Servs.*, 436 U.S. 658, 691-92 (1978).  To state a claim for municipal or county liability, a plaintiff
must allege that "the execution of the government's policy or custom…inflicts the injury." *City
of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (internal citations omitted).  Defendants'
policy of providing resources to their employees did not *cause* Plaintiff's alleged constitutional
deprivations.

        Plaintiff's claims brought against these Defendants on a failure-to-train theory also fail.
While government officials may not be held liable for the unconstitutional conduct of their
subordinates under a theory of *respondeat superior* liability, a supervisor may be held liable in his
individual capacity where he "was personally involved in the constitutional deprivation or a
sufficient causal connection exists between the supervisor's unlawful conduct and the
constitutional violation." *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Edgerly v. City and
County of San Francisco*, 599 F.3d 946, 961 (9th Cir. 2010).  Supervisors can be held liable for:
(1) their own culpable action in the training, supervision, or control of subordinates; (2) their
acquiescence in the constitutional deprivation of which a complaint is made; or (3) for conduct

that showed a reckless or callous indifference to the rights of others.  *Edgerly*, 599 F.3d at 961.

Plaintiff does not allege how these Defendants were personally involved in the constitutional

deprivations he alleges.  While he alleges that the CCSD and Commissioner Blackeye were

"responsible for the hiring, training, continued training, guidance, and discipline of Defendants

Sergeant Evans and JOHN DOE #2," this allegation is conclusory and does not state sufficient

facts to state a colorable claim.

### D.    *Second cause of action.*

Plaintiff titles his second cause of action, "Violation of 42 U.S.C. § 1983 False Arrest and

Imprisonment."  He brings this cause of action against Sergeant Evans, Officer John Doe #1,

CCSD, and Commissioner Blackeye.  The Court liberally construes this cause of action as a claim

for false imprisonment arising under Nevada law.  To assert a false imprisonment claim in

Nevada, the plaintiff must prove (1) the defendant acted intending to confine plaintiff within

boundaries fixed by the defendant; (2) the defendant's act directly resulted in such a confinement

of the plaintiff; and (3) the plaintiff is conscious of the confinement or was harmed by it.

*Hernandez v. City of Reno*, 634 P.2d 668, 671 (Nev. 1981).

Plaintiff alleges a cognizable claim for false imprisonment against Sergeant Evans and

Officer John Doe #1.  Plaintiff alleges that Sergeant Evans and Officer John Doe #1 falsely

imprisoned him when Sergeant Evans ordered Plaintiff's arrest at the family courthouse by the

court marshals and Officer John Doe #1 later arrested and transported Plaintiff to the jailhouse.

Plaintiff has alleged that both Sergeant Evans and Officer John Doe #1 acted intentionally to

confine Plaintiff, that their actions resulted in his confinement, and that he was aware of the

confinement and harmed by it.  So, the Court will allow Plaintiff's false imprisonment claim to

proceed against Sergeant Evans and Officer John Doe #1.

Plaintiff also alleges a cognizable claim for false imprisonment against CCSD but not

against Commissioner Blackeye.  Plaintiff claims that these defendants are personally liable

"because they are either responsible for the hiring, training, continued training, guidance, and

discipline of Defendants Sergeant Evans and JOHN DOE #1."  (*Id.*).  While there is no

*respondeat superior* liability under 42 U.S.C. § 1983, Nevada law provides for *respondeat*

1    *superior* liability when "the employee is under the control of the employer and when the act is

2    within the scope of employment." *Molino v. Asher*, 618 P.2d 878, 879 (Nev. 1980). Plaintiff

3    alleges that Sergeant Evans and Officer John Doe #1 acted within the scope of their employment

4    and that the CCSD is their employer. So, for the purposes of screening, Plaintiff has adequately

5    alleged a colorable false imprisonment claim against CCSD.

6        However, Plaintiff's allegations against Commissioner Blackeye are too conclusory to

7    state a claim upon which relief can be granted. Other than his bald assertion that Commissioner

8    Blackeye failed to train Sergeant Evans and Officer John Doe #1, Plaintiff alleges no facts about

9    the role Commissioner Blackeye played in training these officers and how that role led to the

10    officers' actions. So, Plaintiff appears to bring his claims against Commissioner Blackeye solely

11    under a *respondeat superior* theory of liability. But Plaintiff complaint appears to assert that

12    CCSD, not Commissioner Blackeye, is Sergeant Evans and Officer John Doe #1's employer. The

13    Court thus allows Plaintiff's second cause of action to proceed against CCSD but not against

14    Commissioner Blackeye.

15        **E.    Third cause of action.**

16        Plaintiff's third cause of action is titled "Violation of 42 U.S.C. § 1983 Excessive Use of

17    Force." (ECF No. 9 at 11-12). Plaintiff brings this cause of action against Sergeant Evans,

18    Officer John Doe #1, CCSD, and Commissioner Blackeye. The Court liberally construes

19    Plaintiff's third cause of action as alleging excessive force in violation of the Fourth Amendment.

20        In analyzing an excessive force allegation, courts ask "whether the officers' actions are

21    objectively reasonable in light of the facts and circumstances confronting them." *Graham v.*

22    *Connor*, 490 U.S. 386, 397 (1989) (internal quotations omitted). Plaintiff alleges that Sergeant

23    Evans and Officer John Doe #1 "used excessive force when they detained" him and that the

24    "force used was unwarranted and extremely excessive because PLAINTIFF posed neither a threat

25    nor danger to self, them or the public." (ECF No. 9 at 11-12). Plaintiff alleges that CCSD and

26    Commissioner Blackeye are liable for being Sergeant Evans' and Officer John Doe #1's

27    employers and for training them.

28

Plaintiff's allegations are too conclusory for the Court to determine whether he has alleged a colorable excessive force claim against Sergeant Evans and Officer John Doe #1. Plaintiff does not describe the force they used or what happened during his arrest. Without more, Plaintiff's allegation is a legal conclusion and does not form the basis for a colorable claim. Additionally, as the Court has already stated, there is no *respondeat superior* liability under 42 U.S.C. § 1983. The Court thus dismisses Plaintiff's third cause of action without prejudice and with leave to amend.

### F. *Fourth cause of action.*

Plaintiff's fourth cause of action is titled "Violation of 42 U.S.C. § 1983 Unreasonable Search." (ECF No. 9 at 12-13). He brings this cause of action against Officer John Doe #1, CCSD, Sergeant Evans, and Commissioner Blackeye. The Court construes Plaintiff's fourth cause of action as alleging a claim for unreasonable search and seizure in violation of the Fourth Amendment.

The Fourth Amendment prohibits unreasonable searches and seizures by the Government. *United States v. Valde-Vega*, 685 F.3d 1138, 1143 (9th Cir. 2012). Warrantless searches by law enforcement officers are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions. *United States v. Cervantes*, 678 F.3d 798, 802 (9th Cir 2012). Among the exceptions to the warrant requirement is a search incident to a lawful arrest. *Arizona v. Grant*, 556 U.S. 332, 338 (2009). The search-incident-to-arrest doctrine permits a police officer who makes a lawful arrest to conduct a warrantless search of the arrestee's person and the area within his immediate control. *Davis v. United States*, 564 U.S. 229, 232 (2011). In the case of a lawful custodial arrest, a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a reasonable search under that Amendment. *United States v. Ruckes*, 586 F.3d 713, 717 (9th Cir. 2009).

Plaintiff alleges that, while arresting him, Officer John Doe #1 "entered the pockets, and then removed the clothing of PLAINTIFF without consent and without legal cause." (ECF No. 9 at 12). However, as discussed more fully above, Plaintiff has not sufficiently alleged that Officer John Doe #1 unlawfully arrested him. Instead, it appears from Plaintiff's allegations that Officer

John Doe #1 simply transported Plaintiff to the local jail after family court marshals had arrested him. So, Officer John Doe #1's search of Plaintiff appears to be a search incident to arrest. Ultimately, Plaintiff must allege more facts about his arrest by Officer John Doe #1 for the Court to determine if he has alleged a colorable claim for unreasonable search. Additionally, Plaintiff cannot bring this claim against CCSD and Commissioner Blackeye under a *respondeat superior* theory of liability. Plaintiff also fails to allege that Sergeant Evans had any role in the search. The Court thus dismisses Plaintiff's fourth cause of action without prejudice and with leave to amend.

### G.     Fifth cause of action.

Plaintiff's fifth cause of action is for assault. (ECF No. 9 at 13). He brings it against Sergeant Evans, Officer John Doe #1, CCSD, and Commissioner Blackeye. To establish a claim for assault, a plaintiff must show that the defendant (1) intended to cause harmful or offensive physical contact, and (2) the victim was put in apprehension of such contact. Restatement (Second) of Torts, § 21 (1965); *Burns v. Mayer*, 175 F.Supp.2d 1259, 1269 (D. Nev. 2001).

Liberally construing Plaintiff's complaint, Plaintiff alleges that Sergeant Evans and Officer John Doe #1 intentionally created an apprehension of immediate physical contact to Plaintiff. Plaintiff alleged that Sergeant Evans intended and threatened to arrest Plaintiff if Plaintiff remained within a mile of the school and that, because he apprehended such contact, Plaintiff left the school grounds. (ECF No. 9 at 7). He also alleged that Officer John Doe #1 intended to search him and that Plaintiff was placed in apprehension of that search. (*Id.*).

Plaintiff alleges that CCSD and Commissioner Blackeye are responsible for the assaults by Sergeant Evans and Officer John Doe #1 because "they are responsible for the hiring, training, continued training, guidance, and discipline of Defendants Sergeant Evans and JOHN DOE #1…" (*Id.*). Under Nevada state law, an employer can be liable for the torts of an employee if the employee is under the control of the employer and when the act is within the scope of employment. *Rockwell v. Sun Harbor Budget Suites*, 925 P.2d 1175, 1179 (Nev. 1996). Plaintiff has alleged that Sergeant Evans and Officer John Doe #1 were acting within the scope of their employment when they assaulted him and that CCSD was their employer at the time. But, as

discussed above, Plaintiff appears to allege that CCSD, not Commissioner Blackeye, was Sergeant Evans' and John Doe #1's employer, so Plaintiff's *respondeat superior* claim against Commissioner Blackeye fails. The Court will thus allow Plaintiff's fifth cause of action to proceed against Sergeant Evans, John Doe #1, and CCSD, but not against Commissioner Blackeye.

### H. Sixth cause of action.

Plaintiff's sixth cause of action is for battery. (ECF No. 9 at 13-14). Plaintiff brings this claim against Officer John Doe #1, CCSD, Sergeant Evans, and Commissioner Blackeye. (*Id.*). To establish a battery claim, a plaintiff must show that the defendant (1) intended to cause harmful or offensive contact, and (2) such contact did occur. Restatement (Second) of Torts, §§ 13, 18 (1965); *Burns v. Mayer*, 175 F.Supp.2d 1259, 1269 (D. Nev. 2001). Plaintiff alleges that Officer John Doe #1 used tactical holds on, handcuffed, and searched Plaintiff. (ECF No. 9 at 14). Plaintiff alleges that CCSD, Commissioner Blackeye, and Sergeant Evans are liable because they "ordered the act of JOHN DOE #1" and are "responsible for the hiring, training, continued training, guidance, and discipline of Defendant JOHN DOE #1." (*Id.*).

Plaintiff has successfully alleged a claim for battery against Officer John Doe #1 because he alleges that Officer John Doe #1 intended to cause harmful contact and did when he used tactical holds on, handcuffed, and searched Plaintiff. Additionally, Plaintiff has alleged that Officer John Doe #1 took these actions in the scope of his employment and that CCSD is his employer. So, the Court will allow Plaintiff's sixth cause of action to proceed against Officer John Doe #1 and CCSD.

However, Plaintiff has not alleged that Sergeant Evans intended to cause harmful or offensive contact and that the contact did occur. While Plaintiff alleges in conclusory fashion that Sergeant Evans ordered Officer John Doe #1 to act, Plaintiff's allegations only describe Sergeant Evans ordering family court marshals to detain Plaintiff, not ordering Officer John Doe #1 to do so. Plaintiff's allegations that Sergeant Evans and Commissioner Blackeye were responsible for training and supervising Officer John Doe #1 are similarly too conclusory to state a claim upon which relief can be granted. And again, to the extent Plaintiff seeks to establish *respondeat*

*superior* liability against Sergeant Evans and Commissioner Blackeye, Plaintiff does not plausibly allege that they were Officer John Doe #1's employers.  The Court thus dismisses Plaintiff's sixth cause of action as alleged against Sergeant Evans and Commissioner Blackeye.

### I.        *Seventh cause of action.*

Plaintiff's seventh cause of action is titled "Violation of 42 U.S.C. § 1983 Cruel and Unusual Punishment Conditions of Confinement."  (ECF No. 9 at 15-16).  Plaintiff brings this cause of action against Sergeant Evans, Officer John Doe #1, CCSD, and Commissioner Blackeye.  The Court liberally construes Plaintiff's seventh cause of action as alleging violation of the Due Process Clause of the Fourteenth Amendment.

Pretrial detainees who sue regarding the conditions of their confinement bring their claims under the Fourteenth Amendment's Due Process Clause, not the Eighth Amendment's Cruel and Unusual Punishment Clause.  *Bell v. Wolfish*, 441 U.S. 520, 535-36 (1979) (explaining that under the Due Process Clause, a pre-trial detainee may not be punished prior to conviction); *see Gordon v. County of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018) ("medical care claims brought by pretrial detainees ... arise under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment's Cruel and Unusual Punishment Clause.") (internal citations and quotations omitted).  The Due Process Clause of the Fourteenth Amendment permits the state to subject pretrial detainees to conditions and restrictions of a detention facility as long as those conditions and restrictions do not amount to a punishment.  *Bell*, 441 U.S. at 535-37.  To prevail on a claim that the conditions of confinement violate the Due Process Clause of the Fourteenth Amendment, a plaintiff must meet both the objective and subjective prongs of the test for cruel and unusual punishment under the Eighth Amendment.  *Morgan v. City of Henderson*, No. 2:09-cv-01392-RCJ, 2011 WL 5373979, at *3 (D. Nev. Nov. 4, 2011).  To meet the objective prong, an inmate must show that the deprivation caused by the official's act or omission is sufficiently serious to result in the denial of the minimal civilized measure of life's necessities.  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  The subjective prong requires that an inmate demonstrate that prison officials acted or failed to act with deliberate indifference to a substantial risk of harm to inmate

1   health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate indifference

2   requires that an official be aware of the condition. *Id.* at 837.

3         Plaintiff alleges that Sergeant Evans and Officer John Doe #1 "conspired to violate"

4   Plaintiff's rights when they confined Plaintiff "in their patrol vehicle, jail cell and deliberately

5   exposed Plaintiff to substantial risk of serious harm." (ECF No. 9 at 15-16). He alleges that the

6   two "knew or should have known the current conditions created a substantial risk of serious

7   harm…[and] neglected the risk by failing to take reasonable measures to correct the detrimental

8   situation." (*Id.*). Plaintiff alleges that CCSD and Commissioner Blackeye are liable for Sergeant

9   Evans' and Officer John Doe #1's actions because they employ and train Sergeant Evans and

10  Officer John Doe #1. (*Id.*).

11        Plaintiff does not allege a cognizable claim for violation of his Fourteenth Amendment

12  due process rights. Plaintiff's allegations regarding how Sergeant Evans and Officer John Doe #1

13  subjected him to punishing conditions are entirely conclusory. While Plaintiff alleges that the

14  two placed him in tactical holds and handcuffs and then into a patrol vehicle and jail cell, Plaintiff

15  does not explain how these actions amount to punishment. Plaintiff does not allege how Sergeant

16  Evans and Officer John Doe #1 harmed him or used greater force than necessary to effect the

17  arrest. Indeed, Plaintiff does not allege that Sergeant Evans touched him at all or that Sergeant

18  Evans ordered Officer John Doe #1 to do anything. Plaintiff's claim against CCSD and

19  Commissioner Blackeye fail for these reasons as well and because he brings it under a *respondeat*

20  *superior* theory, which is unavailable under 42 U.S.C. § 1983. The Court dismisses Plaintiff's

21  seventh cause of action without prejudice and with leave to amend.

22        **J.**      **Eighth cause of action.**

23        Plaintiff titles his eighth cause of action "Violation of 42 U.S.C. § 1983 Conspiracy."

24  (ECF No. 9 at 16-17). Plaintiff brings this cause of action against Sergeant Evans, Officer John

25  Doe #1, CCSD and Commissioner Blackeye. (*Id.*). "To state a claim for a conspiracy to violate

26  one's constitutional rights under section 1983, the plaintiff must state specific facts to support the

27  existence of the claimed conspiracy." *Burns v. Cty. of King*, 883 F.2d 819, 821 (9th Cir. 1989).

28  "[A] plaintiff must demonstrate the existence of an agreement or meeting of the minds to violate

1   constitutional rights." *Crowe v. Cty. of San Diego*, 608 F.3d 406, 440 (9th Cir.

2   2010) (quoting *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1301 (9th Cir.

3   1999)) (internal quotation marks omitted).  The agreement "may be inferred on the basis of

4   circumstantial evidence such as the actions of the defendants." *Id.* (quoting *Mendocino*, 192 F.3d

5   at 1301).

6         Plaintiff does not allege a cognizable claim for conspiracy because he does not allege

7   specific facts to support the claimed conspiracy.  Plaintiff has not alleged in any detail a meeting

8   of the minds or an agreement to violate his constitutional rights.  Nor has he alleged

9   circumstantial evidence that would lead the Court to determine that the Defendants had an

10  agreement.  Instead, Plaintiff's allegations are entirely conclusory and do not provide any factual

11  specificity.  The Court thus dismisses Plaintiff's eighth cause of action without prejudice and with

12  leave to amend.

13        **K.**      ***Ninth cause of action.***

14        Plaintiff's ninth cause of action is for intentional infliction of emotional distress.  (ECF

15  No. 9 at 17-19).  Plaintiff brings this claim against Principal Stacey, Officer John Doe #1, CCSD,

16  Commissioner Blackeye, and Superintendent Larsen-Mitchell.  (*Id.*).  To state a claim for

17  intentional infliction of emotional distress under Nevada law, a plaintiff must allege "(1) extreme

18  and outrageous conduct with either the intention of, or reckless disregard for, causing emotional

19  distress, (2) the plaintiff's having suffered severe or extreme emotional distress, and (3) actual or

20  proximate causation." *Welder v. Univ. of S. Nevada*, 833 F.Supp.2d 1240, 1245 (D. Nev. 2011)

21  (quoting *Dillard Dep't Stores, Inc. v. Beckwith,* 115 Nev. 372, 989 P.2d 882, 886 (1999)).

22  "[E]xtreme and outrageous conduct is that which is outside all possible bounds of decency and is

23  regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent–A–Car*, 953

24  P.2d 24, 26 (Nev. 1998) (internal quotations omitted).

25        Taking Plaintiff's allegations as true, he has alleged a cognizable claim for intentional

26  infliction of emotional distress against Principal Stacey and Sergeant Evans and against CCSD

27  under a *respondeat superior* theory of liability.  Plaintiff alleges that Principal Stacey acted in an

28

extreme and outrageous way by drafting[2] a letter containing false allegations that Plaintiff had made threats against the school and its staff and that Plaintiff was not the child's father. (ECF No. 9 at 6). Plaintiff claims that the letter also threatened Plaintiff with arrest and that Principal Stacey read aloud from the letter in front of others. (*Id.*). Plaintiff also alleges that Principal Stacey lied to his child's mother that Plaintiff was stalking and taking pictures of the school and students. (*Id.* at 8). Plaintiff alleges that Principal Stacey declined Plaintiff's requests to see his child, to have access to school records, and to be involved in his child's education despite Plaintiff producing proof that he is the child's father. (*Id.* at 5, 6, 18). Plaintiff has also alleged that Sergeant Evans acted in an extreme and outrageous way by ordering Plaintiff's arrest at the family court even though Sergeant Evans knew that Plaintiff had legitimate reason to be there. (*Id.* at 7, 18). Finally, Plaintiff alleges that both Principal Stacey and Sergeant Evans were acting in the scope of their employment when they took these actions and so, Plaintiff has successfully alleged that CCSD is responsible for their actions under a *respondeat superior* theory of liability. The Court thus allows Plaintiff's ninth cause of action to proceed against Principal Stacey, Sergeant Evans, and CCSD.

Plaintiff has not, however, alleged a cognizable claim against Officer John Doe #1, Commissioner Blackeye, or Superintendent Larsen-Mitchell. As outlined more fully above, Plaintiff has not alleged sufficient facts to show that Officer John Doe #1 arrested him without cause, harmed him during the course of that arrest, or searched him unlawfully. So, Plaintiff has not alleged that Officer John Doe #1 acted outside all bounds of decency. Additionally, Plaintiff's claims against Commissioner Blackeye and Superintendent Larsen-Mitchell are entirely conclusory and do not state a claim upon which relief can be granted. To the extent that Plaintiff alleges they are liable under a *respondeat superior* theory of liability, Plaintiff does not plausibly allege that Commissioner Blackeye and Superintendent Larsen-Mitchell are Principal

---

[2] Later in his complaint, Plaintiff alleges that Principal Stacey composed the letter. (ECF No. 9 at 29).

1    Stacey and Sergeant Evans' employers.  The Court thus dismisses Plaintiff's ninth cause of action

2    against Officer John Doe #1, Commissioner Blackeye, and Superintendent Larsen-Mitchell.

3            **L.      Tenth cause of action.**

4            Plaintiff's tenth cause of action is for negligent infliction of emotional distress.  (ECF No.

5    9 at 19-20).  Plaintiff brings this claim against Principal Stacey, Sergeant Evans, Officer John

6    Doe #1, CCSD, Commissioner Blackeye, and Superintendent Larsen-Mitchell.  (*Id.*).  Nevada

7    recognizes that a direct victim of a negligent act may "be able to assert a negligence claim that

8    includes emotional distress as part of the damage suffered."  *Shoen v. Amerco, Inc.*, 896 P.2d 469,

9    477 (Nev. 1995).  So, "negligent infliction of emotional distress can be an element of the damage

10   sustained by the negligent acts committed directly against the victim-plaintiff."  *Id.*  In negligent

11   infliction of emotional distress claims, "if emotional distress damages are not secondary to

12   physical injuries, but rather, precipitate physical symptoms, either a physical impact must have

13   occurred or, in the absence of physical impact, proof of 'serious emotional distress' causing

14   physical injury or illness must be presented."  *Ferm v. McCarty*, No. 2:12-cv-00782-RFB-PAL,

15   2014 WL 6983234, at *7 (D. Nev. Dec. 9, 2014); (quoting *Bermettler v. Reno Air, Inc.*, 956 P.2d

16   1382, 1387 (Nev. 1998)).

17          As outlined below, Plaintiff has brought a negligence claim that the Court allows to

18   proceed.  Plaintiff alleges that, because of the Defendants' negligent conduct, he "suffered and

19   continues to suffer physical symptoms, pain, anguish, severe emotional trauma, and

20   humiliation…" (ECF No. 9 at 20).  Although Plaintiff does not describe his physical symptoms,

21   because this case is at the screening stage, and because negligent infliction of emotional distress

22   is an element of damages for negligence, the Court will allow Plaintiff's tenth cause of action to

23   proceed.

24           **M.      Eleventh cause of action.**

25          Plaintiff's eleventh cause of action is for negligence.  (ECF No. 9 at 20-22).  He brings

26   this claim against Principal Stacey, Sergeant Evans, Officer John Doe #1, CCSD, Commissioner

27   Blackeye, and Superintendent Larsen-Mitchell.  (*Id.*).  Plaintiff appears to bring both a negligence

28   claim and a negligent training and supervision claim.  The Court allows Plaintiff's negligence

cause of action to proceed against Principal Stacey and Sergeant Evans and against CCSD under a *respondeat superior* theory of liability. But it dismisses Plaintiff's negligent training and supervision claim against Officer John Doe #1, CCSD, Commissioner Blackeye, and Superintendent Larsen-Mitchell.

1.    <u>Negligence.</u>

To state a claim for negligence, a plaintiff must allege that (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached that duty; (3) the breach was the legal cause of the plaintiff's injuries; and (4) the plaintiff suffered damages. *Sadler v. PacifiCare of Nev.*, 340 P.3d 1264, 1267 (Nev. 2014). Whether a defendant owes a plaintiff a duty of care is question of law. *Scialabba v. Brandise Constr. Co. Inc.*, 921 P.2d 928, 930 (1996). "Police officers unquestionably owe a duty of care to the general public." *Vasquez-Brenes v. Las Vegas Metro. Police Dep't*, 51 F.Supp.3d 999, 1014 (D. Nev. 2014) *reversed on other grounds by Vasquez-Brenes v. Las Vegas Metro. Police Dep't*, 670 Fed. App'x 617 (9th Cir. 2016). Certain California courts have found that a school owes a duty of care not only to an attending student, but to the student's parents under certain circumstances. *See Saar v. Oakland Unified School Dist.*, No. 21-cv-01690-KAW, 2021 WL 9758808, at *3-4 (N.D. Cal. May 24, 2021).

Plaintiff alleges that Principal Stacey, Sergeant Evans, and Officer John Doe #1 had a duty to "act according to the standard of ordinary care of a principal and police officer," and that they breached that duty when they took the actions Plaintiff alleged in his complaint. (*Id.*). Plaintiff also appears to allege that CCSD is liable for Principal Stacey, Sergeant Evans, and Officer John Doe #1's actions under a theory of *respondeat superior* liability. For the purposes of screening, the Court finds that Plaintiff has alleged a colorable negligence claim against Principal Stacey and Sergeant Evans, but not against Officer John Doe #1. Plaintiff alleges that Principal Stacey and Sergeant Evans owed him a duty of care in their capacities as principal and police sergeant. Plaintiff alleges that Principal Stacey breached that duty by refusing to honor Plaintiff's parental rights, defaming Plaintiff, and threatening Plaintiff. Plaintiff alleges that Sergeant Evans breached that duty by threatening Plaintiff and ultimately ordering Plaintiff's unlawful arrest. Plaintiff alleges that, as a result of these acts, he suffered damages. Additionally, because

1    Plaintiff alleges that Principal Stacey and Sergeant Evans acted in the scope of their employment,

2    he has also alleged a colorable claim for negligence against CCSD under a *respondeat superior*

3    theory of liability.

4         Regarding Officer John Doe #1, while Plaintiff alleges that Officer John Doe #1

5    handcuffed him, searched him, and transported him to the local jail, Plaintiff does not allege that

6    Officer John Doe #1 acted unlawfully or without cause.  Additionally, although Plaintiff alleges

7    that Officer John Doe #1 confiscated his driver's license, Plaintiff does not allege that Officer

8    John Doe #1 failed to give it back upon Plaintiff's release from jail on purpose or that Plaintiff

9    was unable to later retrieve it.  The Court thus allows Plaintiff's negligence claim to proceed

10    against Sergeant Evans, Principal Stacey, and CCSD.  It dismisses his negligence claim against

11    Officer John Doe #1 without prejudice and with leave to amend.

12                       2.    Negligent training and supervision.

13         To establish a claim for negligent training or supervision, a plaintiff must show (1) a duty

14    of care owed to the plaintiff; (2) breach of that duty by failing to train or supervise an employee

15    even though defendant knew or should have known of the employee's dangerous propensities;

16    (3) the breach was the cause of plaintiff's injuries; and (4) damages.  *Freeman Expositions, LLC*

17    *v. Eighth Jud. Dist. Ct.*, 520 P.3d 803, 811 (Nev. 2022).  Plaintiff alleges that CCSD,

18    Commissioner Blackeye, and Superintendent Larsen-Mitchell owed him a duty to supervise and

19    train Principal Stacey, Sergeant Evans, and Officer John Doe #1.  He alleges that these

20    Defendants breached this duty by retaining Principal Stacey, Sergeant Evans, and Officer John

21    Doe #1 when they knew that these Defendants had "[d]etrimental characteristics" that "threatened

22    those individuals within the [C]ity of North Las Vegas."  (ECF No. 9 at 20-22).

23         Plaintiff has not alleged a colorable negligent training and supervision claim against

24    CCSD, Commissioner Blackeye, and Superintendent Larsen-Mitchell.  While Plaintiff describes

25    exactly what actions Principal Stacey and Sergeant Evans took to breach their duty of care to him

26    (although he does not allege how Officer John Doe #1 breached his duty), Plaintiff only vaguely

27    describes CCSD's, Commissioner Blackeye's, and Superintendent Larsen-Mitchell's actions.

28

1    Ultimately, his claim against these Defendants amounts to nothing more than a bald recitation of

2    the elements of negligent training and supervision.

3            *N.    Twelfth cause of action.*

4            Plaintiff's twelfth cause of action is titled "Violation of 42 U.S.C. § 1983 Refusing or

5    Neglecting to Prevent Harm to Citizens."  (ECF No. 9 at 22-23).  He brings this cause of action

6    against CCSD.  The Court liberally construes Plaintiff's twelfth cause of action as alleging a

7    failure-to-train theory of municipal liability against CCSD.[3]  A municipality's failure to train an

8    employee who has caused a constitutional violation can be the basis for § 1983 liability if the

9    failure to train amounts to deliberate indifference to the rights of persons with whom the

10   employee comes into contact.  *City of Canton Ohio v. Harris*, 489 U.S. 378, 388 (1989).

11   However, merely alleging that an existing training program for a class of employees represents a

12   policy for which the city is responsible is not adequate to state a failure-to-train claim under

13   § 1983.  *Id.* at 389-90.

14           Here, Plaintiff's allegations are too conclusory to state a cognizable failure-to-train claim.

15   Plaintiff alleges that CCSD "had knowledge, or should have had knowledge had [it] diligently

16   exercised those duties to instruct, supervise, control, and discipline on a continuing basis the

17   wrongs conspired to be done and were done, as heretofore alleged."  (ECF No. 9 at 23).  But

18   merely alleging that CCSD failed to control its employees is not sufficient to establish a colorable

19   claim that it failed to train them.  The Court thus dismisses Plaintiff's twelfth cause of action

20   without prejudice and with leave to amend.

21           *O.    Thirteenth cause of action.*

22           Plaintiff's thirteenth cause of action is titled "Violation of 42 U.S.C. § 1983 Violation of

23   Federal Civil Rights."  (ECF No. 9 at 24).  He brings it against Sergeant Evans and Officer John

24   Doe #1.  However, Plaintiff's thirteenth cause of action appears to be a repetition of his previous

25

26   [3] It is not entirely clear whether Plaintiff is attempting to allege a failure-to-train theory or a
     *respondeat superior* theory of liability in his twelfth cause of action.  However, because there is
27   no *respondeat superior* liability under 42 U.S.C. § 1983, the Court liberally construes this cause
     of action as alleging a failure-to-train theory.
28

causes of action against these Defendants.  He simply alleges that Sergeant Evans and John Doe #1 violated his civil rights "by either ordering, assisting and/or participating in the detaining, arresting, assaulting, battering, inflicting cruel and unusual punishment, and deprivation of property thereon."  (ECF No. 9 at 24).  Because his claim is repetitive and conclusory, the Court dismisses it without prejudice and with leave to amend.

### P.    Fourteenth cause of action.

Plaintiff's fourteenth cause of action is titled "Violation of 42 U.S.C. § 1993 Peace Officer Liability."  (ECF No. 9 at 24-25).  He brings it against Sergeant Evans and Officer John Doe #1 "for punitive damages."  (*Id.*).  However, Plaintiff's fourteenth cause of action is repetitive of his excessive force claim.  The Court thus dismisses it without prejudice and with leave to amend.

### Q.    Fifteenth cause of action.

Plaintiff's fifteenth cause of action is titled "Violation of 42 U.S.C. § 1983 Municipal Liability."  He brings it against CCSD.  A municipality may be found liable under § 1983 only where the municipality itself causes the violation at issue.  *City of Canton*, 489 U.S. at 385 (citing *Monell v. N.Y.C. Dep't of Social Servs.*, 436 U.S. 658 (1978)).  To state a claim for municipal liability, a plaintiff must allege that he suffered a constitutional deprivation that was the product of a policy or custom of the local government unit.  *Id.*  "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  Municipalities are not vicariously liable under § 1983 for their employees' actions.  *Id.* at 60.

A policy has been defined as "a deliberate choice to follow a course of action ... made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."  *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Waggy v. Spokane Cnty.*, 594 F.3d 707, 713 (9th Cir. 2010).  The weight of authority has established that a "policy can be one of action or inaction" within the meaning of *Monell*.  *Waggy*, 594 F.3d at 713 (citing *City of Canton*, 489 U.S. at 388).  "Both types of claims require that the plaintiff prove a constitutional violation."  *Id.*  Merely including a

conclusory allegation that there is a custom or policy is insufficient. *Iqbal*, 556 U.S. at 680-81. Thus, a plaintiff must go beyond bare assertions and plead facts sufficient to show that there is a policy and what the policy is. *Id.* at 678-81.

Plaintiff alleges that CCSD "had a general policy, pattern and/or practice of not supervising, disciplining police officers for their conduct…" (ECF No. 9 at 26). He alleges that CCSD sanctioned certain customs, practices, and policies including using excessive force, ignoring the need for training and supervision, failing to discipline officers, failing to supervise officers, failing to train officers, and allowing unfit officers to retain their positions. (ECF No. 9 at 27-28). Plaintiff alleges that Sergeant Evans and Officer John Doe #1 were acting pursuant to these policies when they took the actions alleged in Plaintiff's complaint. (*Id.*).

Plaintiff's allegations are too conclusory to state a claim upon which relief can be granted. While he attempts to describe what the policies and customs at issue are, Plaintiff's descriptions of those policies and customs are threadbare and do not provide specific detail about the policies and customs he alleges caused his deprivations. The Court thus dismisses Plaintiff's fifteenth cause of action without prejudice and with leave to amend.

### R.      Sixteenth cause of action.

Plaintiff's sixteenth cause of action is titled "Violation of 42 U.S.C. § 1983 Violation of Federal Civil Rights." (ECF No. 9 at 29-31). Plaintiff brings this claim against Principal Stacey, CCSD, and Superintendent Larsen-Mitchell. (*Id.*). The Court liberally construes this cause of action as alleging a state law defamation claim and a claim for violation of Plaintiff's Fourteenth Amendment due process rights.

#### 1.      State law defamation.

Under state law, defamation encompasses both slander (spoken) and libel (written) defamatory statements. *Flowers v. Carville*, 292 F.Supp.2d 1225, 1232 n.1 (D. Nev. 2003). To state a claim for defamation, Plaintiff must allege the following elements: "(1) a false and defamatory statement by [a] defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Rosen v. Tarkanian*, 453 P.3d 1220, 1225 (Nev. 2019); *see also* Nev. Rev. Stat. § 200.510(1)

1   (defining libel).  Whether a statement is capable of a defamatory construction is a question of law

2   for the court to decide.  *Branda v. Sanford*, 637 P.2d 1223, 1225 (Nev. 1981).  "A statement is

3   defamatory when, '[u]nder any reasonable definition[,] such charges would tend to lower the

4   subject in the estimation of the community and to excite derogatory opinions against him and to

5   hold him up to contempt.'"  *Posadas v. City of Reno*, 851 P.2d 438, 453 (Nev. 1993) (*quoting Las

6   Vegas Sun v. Franklin*, 329 P.2d 867, 869 (Nev. 1958)).

7       Plaintiff alleges that Principal Stacey falsely stated that Plaintiff had made threats against

8   the school and its staff, that Plaintiff was not the child's father, and that Plaintiff was stalking and

9   taking photos of the school and students.  (ECF No. 9 at 6, 8).  Plaintiff alleges that Principal

10  Stacey intentionally published these statements by writing them in a letter, stating them out loud

11  in front of others, and telling them to the child's mother.  (*Id.*).  Plaintiff also alleged that

12  Principal Stacey took these actions in the scope of her employment.  The Court will thus allow

13  Plaintiff's defamation claim to proceed against Principal Stacey and against CCSD under a theory

14  of *respondeat superior.*

15      However, Plaintiff's allegations against Superintendent Larsen-Mitchell's involvement are

16  entirely conclusory.  Plaintiff also does not plausibly allege that Superintendent Larsen-Mitchell

17  is Principal Stacey's employer.  The Court thus dismisses Plaintiff's defamation claim against

18  Superintendent Larsen-Mitchell.

19              2.    <u>Defamation in violation of the Fourteenth Amendment.</u>

20      Defamation by a state actor does not amount to a deprivation of liberty within the meaning

21  of the Fourteenth Amendment unless it causes injury to some interest other than mere loss of

22  reputation.  *See Paul v. Davis*, 424 U.S. 693, 711-12 (1976).  To state a claim under 42 U.S.C.

23  § 1983 predicated upon an act of defamation, a plaintiff must allege what is often referred to as a

24  "stigma-plus" claim:  "a stigmatizing statement" plus a deprivation of a "tangible interest"

25  without due process of law.  *Ulrich v. City & Cnty. of San Francisco*, 308 F.3d 968, 982 (9th Cir.

26  2002).  To state a "stigma-plus" claim, a plaintiff must allege two elements: (1) "the public

27  disclosure of a stigmatizing statement by the government, the accuracy of which is contested, and

28  (2) the denial of some more tangible interest such as employment or the alteration of a right or

status recognized by state law." *Id.* (quotation marks omitted).  The Supreme Court has held that the right of parents to make decisions concerning the care, custody, and control of their children is a fundamental liberty interest protected by the Due Process Clause. *See Troxel v. Granville*, 530 U.S. 57, 66 (2000).

Plaintiff has alleged a successful Fourteenth Amendment claim against Principal Stacey. Plaintiff alleges that, acting in her role as principal of a public school, Principal Stacey defamed Plaintiff and threatened him with arrest.  (ECF No. 9 at 6, 8).  This caused Plaintiff to leave the school grounds and thwarted his efforts to make decisions regarding his child.  The Court thus allows Plaintiff's Fourteenth Amendment claim to proceed against Principal Stacey.

The Court dismisses Plaintiff's Fourteenth Amendment claim as alleged against CCSD and Superintendent Larsen-Mitchell.  Again, Plaintiff has not alleged what involvement Superintendent Larsen-Mitchell had in Principal Stacey's statements other than threadbare allegations about training and supervision.  And there is no *respondeat superior* liability under § 1983.

The Court thus allows certain of Plaintiff's claims to proceed and dismisses others without prejudice and with leave to amend.

**IT IS THEREFORE ORDERED** that the following claims shall proceed in this action:

- Unlawful arrest in violation of the Fourth Amendment against Sergeant Evans.
- False imprisonment against Sergeant Evans and CCSD.
- Assault against Sergeant Evans and CCSD.
- Intentional infliction of emotional distress against Principal Stacey, Sergeant Evans, and CCSD.
- Negligent infliction of emotional distress as an element of damages for Plaintiff's successful negligence claims.
- Negligence against Principal Stacey, Sergeant Evans, and CCSD.
- Defamation against Principal Stacey and CCSD.
- Defamation in violation of the Fourteenth Amendment against Principal Stacey.

**IT IS FURTHER ORDERED** that the following claims shall only proceed once Plaintiff has provided the true name of Officer John Doe #1.[4]

- False imprisonment against Officer John Doe #1 and CCSD. [5]
- Assault against Officer John Doe #1 and CCSD.
- Battery against Officer John Doe #1 and CCSD.

**IT IS FURTHER ORDERED** that the following claims are dismissed without prejudice and with leave to amend:

- Plaintiff's claims against the City.
- Plaintiff's claims against CCSD Police Department.
- Unlawful arrest in violation of the Fourth Amendment against Officer John Doe #1.
- Unlawful arrest in violation of the Fourth Amendment against CCSD and Commissioner Blackeye.
- False imprisonment against Commissioner Blackeye.
- Excessive force in violation of the Fourth Amendment against Sergeant Evans, Officer John Doe #1, CCSD, and Commissioner Blackeye.
- Unreasonable search and seizure in violation of the Fourth Amendment against Officer John Doe #1, Sergeant Evans, CCSD, and Commissioner Blackeye.
- Assault against Commissioner Blackeye.
- Battery against Sergeant Evans and Commissioner Blackeye.
- Deliberate indifference in violation of the Fourteenth Amendment against Sergeant Evans, Officer John Doe #1, CCSD, and Commissioner Blackeye.

---

[4] Although the use of "Doe" to identify a defendant is not favored, flexibility is allowed in some cases where the identity of the parties will not be known prior to filing a complaint but can subsequently be determined through discovery. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). If the true identify of John Doe #1 comes to light during discovery, Plaintiff may either move to substitute John Doe #1's true name or move to amend his complaint to assert these claims against John Doe #1.

[5] Plaintiff has also brought his false imprisonment, assault, and battery claims against CCSD under a theory of *respondeat superior* for Officer John Doe #1's actions.

1        &bull; Conspiracy to violate constitutional rights against Sergeant Evans, Officer John

2            Doe #1, CCSD, and Commissioner Blackeye.

3        &bull; Intentional infliction of emotional distress against Officer John Doe #1,

4            Commissioner Blackeye, and Superintendent Larsen-Mitchell.

5        &bull; Negligence against Officer John Doe #1.

6        &bull; Negligent training and supervision against CCSD, Commissioner Blackeye, and

7            Superintendent Larsen-Mitchell.

8        &bull; 42 U.S.C. § 1983 "failure-to-train" municipal liability claim against CCSD.

9        &bull; "Violation of Federal Civil Rights" claim against Sergeant Evans and Officer John

10           Doe #1.

11       &bull; "Peace Officer Liability" claim against Sergeant Evans and Officer John Doe #1.

12       &bull; "Municipal Liability" claim against CCSD.

13       &bull; Defamation against Superintendent Larsen-Mitchell.

14       &bull; Defamation in violation of the Fourteenth Amendment against Superintendent

15           Larsen-Mitchell and CCSD.

16       **IT IS FURTHER ORDERED** that Plaintiff's amended complaint (ECF No. 9) shall be

17 the operative complaint in this action.

18       **IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to issue

19 summonses to: (1) Clark County School District; (2) Principal Chris Stacey; and (3) Sergeant

20 Evans.

21       **IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to deliver the

22 summonses and three copies of the amended complaint filed at ECF No. 9 to the United States

23 Marshals Service ("USMS") for service.[6]

24

25

26

27

28
---
[6] Because Plaintiff is proceeding *in forma pauperis* under 28 U.S.C. § 1915, he is entitled to rely on the USMS for service. *See* Fed. R. Civ. P. 4(c)(3).

1    **IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to send Plaintiff

2  three copies of Form USM-285.[7]

3    **IT IS FURTHER ORDERED** that Plaintiff must complete a USM-285 form for each

4  Defendant against whom Plaintiff's claims are proceeding and provide an address where each

5  Defendant can be served with process.  Once completed, Plaintiff must provide the completed

6  USM-285 forms to the U.S. Marshals Service.  Plaintiff shall have until **November 29, 2024,** to

7  furnish the U.S. Marshals Service with the required form.

8    **IT IS FURTHER ORDERED** that upon receipt of the issued summonses, the USM-285

9  forms, and the copies of the operative complaint—and pursuant to Federal Rule of Civil

10  Procedure 4(c)(3)—the U.S. Marshals Service shall attempt service upon the Defendants.

11    **IT IS FURTHER ORDERED** that, within twenty-one days after receiving from the U.S.

12  Marshals Service a copy of the form USM-285 showing whether service has been accomplished,

13  Plaintiff must file a notice with the Court identifying whether the Defendants were served.  If

14  Plaintiff wishes to have service again attempted on a Defendant, he must file a motion with the

15  Court identifying the Defendant and specifying a more detailed name and/or address for that

16  Defendant or whether some other manner of service should be attempted.

17    **IT IS FURTHER ORDERED** that Plaintiff shall have until **February 6, 2025** to

18  accomplish service on Defendants under Federal Rule of Civil Procedure 4(m).

19    **IT IS FURTHER ORDERED** that from this point forward, Plaintiff shall serve upon the

20  Defendants, or, if appearance has been entered by counsel, upon the attorney(s), a copy of every

21  pleading, motion, or other document submitted for consideration by the Court.  Plaintiff shall

22  include with the original papers submitted for filing a certificate stating the date that a true and

23  correct copy of the document was mailed to Defendants or counsel for Defendants.  The Court

24  may disregard any paper received by a district judge or magistrate judge that has not been filed

25

26

27  ───────────────

28  [7] The USM-285 form is also available at: https://www.usmarshals.gov/resources/forms/usm-285-us-marshals-process-receipt-and-return

with the Clerk, and any paper received by a district judge, magistrate judge, or the Clerk that fails
to include a certificate of service.

DATED: November 12, 2024

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE